# THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| JOSHUA CACHO, | § |
| Plaintiff, | § § § § |
| v. | § § |
| GOHEALTH, LLC, a Delaware Limited Liability Company | § § § |
| Defendant. | § § § |

FILED 2022 OCT -6 PM 4:43 US DISTRICT COURT MIDDLE DISTRICT OF FLORIDA ORLANDO, FLORIDA

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. The Plaintiff is JOSHUA CACHO ("Plaintiff") a natural person, resident of the Middle District of Florida, and was present in Florida for all calls, in this case in Seminole County, Florida.

2. Defendant GOHEALTH, LLC ("GH" "Defendant") is a limited liability company organized and existing under the laws of Delaware with its principal address at 214 West Huron Street, Chicago, Illinois 60654 and is a registered foreign corporation in Florida and can be served via registered agent Corporation Service Company at 1201 Hays Street, Tallahassee, Florida 32301.

### JURISDICTION AND VENUE

3. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

1

## PERSONAL JURISDICTION

4. This Court has general personal jurisdiction over the Defendant because they have repeatedly placed robocalls to Florida residents, and derived revenue from Florida residents, and they sell goods and services to Florida residents, including the Plaintiff.

5. Defendant GH maintains sufficient minimum contacts with this District, have purposefully availed themselves of the privilege of doing business in this District, maintains a registered agent in Florida, and possess such significant and continuous presence in this District as to be subject to the personal jurisdiction of this Court.

## VENUE

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Florida residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District.

7. This Court has venue over Defendant GH because the robocalls at issue were sent on behalf of Defendant GH at the authorization of Defendant GH to Plaintiff, a Florida resident.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

8. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

9. The TCPA makes it unlawful "to make any call (other than a call made for emergency

2

purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

10. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

11. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

12. Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

13. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

14. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

15. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

3

16. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

17. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

18. The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

19. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

20. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g., Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate

4

actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

21.     Plaintiff's personal cell phone (407) 577-3881 has been registered on the National Do-Not-Call Registry since July 2, 2021.

22.     Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

23.     Defendant GH is a "insurance brokerage" company for multiple different insurance carriers that offers additional Medicare benefit plans to senior citizens over the age of 65 years old. *See Exhibit A*.

24.     As part of their marketing, Defendant GH hires and authorizes third-party telemarketers to make illegal robocalls with a prerecorded voice message to thousands of consumers to solicit Medicare benefit plans on behalf of Defendant GH's carriers.

25.     Defendant GH approves of the contracts with these telemarketers.

26.     Defendant GH pays the telemarketers out of bank accounts they own and control.

27.     Defendant GH provides their telemarketers with lead qualifying questions that target senior citizens over the age of 65 years.

28.     Defendant GH instructs their telemarketers to transfer every lead and potential consumer they retain to one of Defendant GH's representatives.

29. Every time Defendant GH's representatives makes a change or adds additional Medicare benefits to a consumers Medicare plan it benefits Defendant GH and their telemarketers/representatives financially.

30. Defendant GH gets paid a commission from each of their insurance carriers.

31. Defendant GH has been sued multiple times prior to this lawsuit for violating the TCPA *Cunningham v. Quogen, LLC et al*, No. 4:19-cv-00237-ALM-CAN (E.D.TX., Mar. 27, 2019), *Blackbourn v. GoHealth, LLC et al*, No. 1:19-cv-04655 (N.D.IL., Jun. 10, 2019), *Fitzhenry v. GoHealth, LLC,* No. 1:19-cv-06318 (N.D.IL., Sept. 23, 2019), *Hossfeld et al v. Norvax, LLC et al*, No. 1:20-cv-06566 (N.D.IL., Nov. 04, 2020), *Clough, ll v. GoHealth, LLC*, et al, No. 1:22-cv-03081 (N.D..IL., Jun. 13, 2022), *Doyle v. GoHealth, LLC*, No. 2:22-cv-04291-MCA-JRA (D.NJ., Jun. 27, 2022) and continue their unlawful behavior because violating the TCPA benefits them financially.

32. Defendant GH knowing and willfully violate the TCPA.

33. Plaintiff received at least six (6) robocalls with a prerecorded voice message to his personal cell phone 3881 from telemarketers soliciting additional Medicare benefits on behalf of and apparent authority from Defendant GH within a thirty-day period ("the calls").

34. The calls all started with the same prerecorded voice message before being connected to a telemarketer that stated,

"Hello, this is Catherine and I'm calling from Medicare health services how are you doing today? We are giving you a call because new Medicare plans just became available and you may not be getting all the coverage and benefits you qualify for with your current plan I just have a few quick questions for you and I will get you over to an agent to review your coverage options okay? Are you covered under Medicare part A and part B or both? Awesome great you seem like a perfect candidate now let me connect you with one of our senior verifiers to help you learn more about your Medicare options and benefits you may qualify for."

35. The prerecorded voice message does not identify Defendant GH.

6

36. With information and belief Plaintiff has received more phone calls from or on behalf of Defendant GH within the past two years and the true number of calls will be revealed during discovery.

37. On July 28, 2022, Plaintiff received a phone call to his personal cell phone 3881 from a telemarketer calling on behalf of Defendant GH from phone number (407) 528-5991.

38. Plaintiff answered and heard a prerecorded voice message "Hello, this is Catherine and I'm calling from Medicare health services."

39. Plaintiff was extremely annoyed, exhausted, frustrated, and annoyed for continuing to be harassed with the same prerecorded voice message and followed the prompts in order to identify the company responsible for the calls.

40. Plaintiff was then transferred to a telemarketer calling on behalf of Defendant GH named Rodney Adams that stated he was with "Medicare health services."

41. Rodney falsely identified the company he was calling on behalf of "Medicare health services" in violation of Florida Statute Title XXXIII Regulation of Trade, Commerce, Investments, and Solicitations 501.059(8)(b) and 47 C.F.R. 64.1200(d)(4).

42. Defendant GH instructs their telemarketers not to reveal their true identity and to use a generic name such as "Medicare health services" for the sole purpose of ducking liability for violating the TCPA.

43. Rodney advised Plaintiff the reason for the call was because Medicare recently announced some new benefits and savings for 2022 that can be added to his existing Medicare plan.

44. With the permission of an individual Plaintiff knows has Medicare, Plaintiff asked the individual if he can borrow their Medicare information for the sole purpose of identifying the

company responsible for the calls. Plaintiff did not borrow the individuals Medicare information to gain any additional Medicare benefits or to perform any Medicare fraud that would violate any laws or cause the US government any financial loss.

45. Rodney then asked Plaintiff qualifying questions and solicited Plaintiff for additional Medicare benefits on behalf of Defendant GH.

46. Rodney advised Plaintiff he was going to transfer him to a "licensed agent."

47. Plaintiff was then transferred to another telemarketer named Louis that stated he was going to verify Plaintiff's information and then was going to transfer Plaintiff to a benefit advisor that will go over the benefits and savings Plaintiff will qualify for.

48. Louis then transferred Plaintiff to a representative named Patricia Mills that stated she was a licensed insurance agent with Defendant GH.

49. Patricia advised Plaintiff that she can help him save money and increase his Medicare benefits.

50. Patricia checked on coverages and then solicited Plaintiff for a five-star rated United Health Care AARP Medicare Advantage HMO plan on behalf of Defendant GH that would provide Plaintiff additional Medicare benefits.

51. Patricia sent Plaintiff an email with her information along with the United Health Care AARP Medicare Advantage HMO plan. *See Exhibit B.*

52. The email Plaintiff received from Patricia revealed the company responsible for the calls.

53. Table A below displays the calls made to Plaintiff on behalf of Defendant GH:

TABLE A

| **Number:** | **Date** | **Time** | **Caller ID** | **Notes** |
|---|---|---|---|---|

| 1. | 07/05/2022 | 4:45 PM | 407-587-5877 | Catherine Medicare health services prerecorded voice message. |
|---|---|---|---|---|
| 2. | 07/06/2022 | 3:31 PM | 407-553-9635 | Catherine Medicare health services prerecorded voice message. |
| 3. | 07/06/2022 | 6:03 PM | 407-585-1742 | Catherine Medicare health services prerecorded voice message. |
| 4. | 07/13/2022 | 2:08 PM | 407-585-1538 | Catherine Medicare health services prerecorded voice message. |
| 5. | 07/25/2022 | 5:48 PM | 407-526-8180 | Catherine Medicare health services prerecorded voice message. |
| 6. | 07/28/2022 | 6:43 PM | 407-528-5991 | Catherine Medicare health services prerecorded voice message. Transferred to telemarketers Rodney and Louis. Transferred to rep Patty from GoHealth, LLC she emailed her info. |

54. Defendant GH's telemarketers initiated numerous robocalls with a prerecorded voice message to Plaintiff's personal cell phone that violate the TCPA and made unlawful telemarketing sales pitches regarding additional Medicare benefits.

55. No emergency necessitated none of the alleged phone calls.

56. Plaintiff sent an internal do-not-call policy request to Defendant GH to email customerservice@gohealth.com on September 26, 2022, which is an email listed on the website they own and control https://www.gohealth.com.

57. Despite the email, Defendant GH failed and/or refused to send Plaintiff a do-not-call policy.

58. Upon information and belief, Defendant GH did not have a written do-not-call policy while it was sending Plaintiff the calls.

9

59.     Upon information and belief, Defendant GH did not train their agents who engaged in telemarketing on the existence and use of any do-not-call list.

60.     Such conduct violates the TCPA and its implementing regulations, 47 CFR § 64.1200(d)(3)(requiring telemarketers to honor and record DNC requests when made).

61.     Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

## VICARIOUS LIABILITY OF DEFENDANT GH

62.     Defendant is vicariously liable for the telemarketing calls that generated the lead on their behalf.

63.     The FCC is tasked with promulgating rules and orders related to enforcement of the TCPA. 47 U.S.C. § 227(b)(2).

64.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

65.     The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

66.     The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its
> telemarketing activities to unsupervised third parties would leave

> consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the GH States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because sellers may have thousands of independent marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted) (alteration marks and internal quotation marks omitted).

67. More specifically, *Dish* held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

68. The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

69. To the contrary, the FCC—armed with extensive data about robocalls and Americans' complaints about them—determined that vicarious liability is essential to serve the TCPA's remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587 ¶ 36.

70. Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

71. Defendant is legally responsible for ensuring that the affiliates that make telemarketing calls on their behalf comply with the TCPA when so doing.

72.     Defendant knowingly and actively accepted business that originated through illegal telemarketing.

73.     Defendant knew (or reasonably should have known) that their telemarketer was violating the TCPA on their behalf but failed to take effective steps within their power to force the telemarketer to cease that conduct.

74.     By hiring a company to make calls on their behalf, Defendant "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

75.     Moreover, Defendant maintained interim control over the actions of its telemarketers.

76.     For example, Defendant had absolute control over whether, and under what circumstances, they would accept a customer from its telemarketers.

77.     Furthermore, Defendant has day-to-day control over the actions of its telemarketers, including the ability to prohibit them from sending robocalls with a prerecorded voice message to contact potential customers of Defendant and the ability to require them to respect the National Do Not Call Registry.

78.     Defendant also gave interim instructions to its telemarketers by providing lead-qualifying instructions and lead volume limits.

79.     Defendant donned its telemarketers with apparent authority to make the calls at issue. Thus, the telemarketers pitched "Medicare benefits" in the abstract.

80.     Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

81. "[A]pparent authority can arise in multiple ways and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

82. A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

83. Defendant's telemarketers transferred customer information, including Plaintiff's contact information, directly to Defendant GH. Thus, the telemarketer had the "ability . . . to enter consumer information into the seller's sales or customer systems," which the FCC has explained to show apparent agency. *Dish*, 28 FCC Rcd. at 6592 ¶ 46.

84. Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

85. Defendant is the liable party as the direct beneficiary of the illegal telemarketing robocalls as they stood to gain Plaintiff as a customer when telemarketers solicited Plaintiff for additional Medicare benefits on their behalf.

### INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
### AS A RESULT OF THE CALLS

86. Defendant GH's calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

87. Defendant GH's calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

88. Defendant GH's calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

89. Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

### Plaintiff's cell phone is a residential number

90. The calls were to Plaintiff's cellular phone 3881 which is Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### CAUSES OF ACTION:

### COUNT ONE:
### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent

91. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

92. Defendant and/or their affiliates or agents violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), at least six (6) times by placing non-emergency telemarketing calls to

Plaintiff's cellular telephone number with a prerecorded voice message without prior express written consent.

93. Plaintiff was statutorily damaged at least six (6) times under 47 U.S.C. § 227(b)(3)(B) by Defendant by the telephone calls described above, in the amount of $500.00 per call.

94. Plaintiff was further statutorily damaged because Defendant willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each and every willful and/or knowing violation.

95. Plaintiff is also entitled to and does seek an injunction prohibiting Defendant and their affiliates and agents from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-emergency telemarketing robocalls with a prerecorded voice message to any cellular telephone number without prior express written consent.

## COUNT TWO:
### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))

96. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

97. Defendant called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

98. Plaintiff was statutorily damaged at least six (6) times under 47 U.S.C. § 227(c)(3)(F) by Defendant by the telemarketing calls described above, in the amount of $500.00 per call.

99. Plaintiff was further statutorily damaged because Defendant willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

100. Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT THREE:
### Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)

101. Plaintiff incorporates the forgoing allegations as if fully set forth herein.

102. The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following:

   a. A written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1)[2];

   b. Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[3]; and,

   c. In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

103. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

104. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Joshua Cacho prays for judgment against the Defendant jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendant violate the TCPA law;

C. An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporation for 6 calls.

D. An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporation for 6 calls.

E. An award to Plaintiff of damages, as allowed by law under the TCPA;

F. An award to Plaintiff of interest, costs and attorneys' fees, as allowed by law and equity.

G. Such further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

September 28, 2022,                         Respectfully submitted,

*[signature]*

Joshua Cacho
Plaintiff, Pro Se

164 Estella Road
Lake Mary, Florida 32746
407-577-3881
Bostonreds.85@gmail.com